**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ROBERT ANTHONY WEBSTER,    )
                           )
           Plaintiff,     )
                           )
           v.              )      1:22CV1025
                           )
DREW HOLLEY,              )
                           )
           Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendant Drew Holley's Motion to Dismiss (Docket Entry 16; <u>see also</u> Docket Entry 17 ("Supporting Memorandum")), to which Plaintiff responded (Docket Entry 19 (the "Response")) and Defendant replied (Docket Entry 20 (the "Reply")). For the reasons that follow, the Court should deny the Motion to Dismiss.

## I. BACKGROUND

Plaintiff, proceeding pro se, filed the Complaint in this case alleging that Defendant (at the time identified as Mike Apple, an officer with the Alamance County, North Carolina, Sheriff's Office), used unlawful force in arresting Plaintiff on September 18, 2022. (<u>See</u> Docket Entry 2 at 2, 4.) Specifically, the Complaint contends that Plaintiff engaged in a high speed chase with Defendant and, after Plaintiff "got stopped" (<u>id.</u> at 4) and "was in custody" (<u>id.</u> at 3), Defendant "allowed his K9 unit dog to

continue to attack [Plaintiff]" (id.).  As a result of the police canine's "repeated[ attacks]" (id. at 4), Plaintiff suffered broken ribs, a "laceration to [his] left arm[ which required] 22 staples, [as well as] scars to [his] back[, ] left side, and right shoulder" (id.).

The Court (per the undersigned United States Magistrate Judge) concluded that those allegations "suffic[ed] to allow the Complaint to go forward on an excessive force claim as to Defendant Apple." (Docket Entry 3 at 3.)  The Court (per United States District Judge Loretta C. Biggs) adopted that Recommendation and permitted "Plaintiff['s] claim against Defendant Mike Apple . . . to proceed."  (Docket Entry 6 at 1.)

In the meantime, Plaintiff amended his Complaint. (See Docket Entry 5.)  The Amended Complaint includes only the first two pages from the United States District Court Form 14 (a "Complaint for Violation of Civil Rights"), which consists of the title page and a page identifying the parties to the action. (See Docket Entry 5 at 1-2.)  On the second page, Plaintiff changed Defendant's name to "D. Holly" (id. at 2) and listed his employer as "Burlington Police Dept." (id.).  Plaintiff attached a note to his Amended Complaint, wherein he stated that "[his] lawyer gave [him] the wrong name for [his suit, and that t]he officer is D. Holley." (Id. at 3.)

2

Plaintiff thereafter filed a letter motion with the Court, reiterating that "[his] state lawyer gave [him] the wrong officer name . . . and [he] need[s] to have [Defendant's name] changed from Officer Mike Apple to Officer Drew Holley of the Alamance County Sheriff[']s Office." (Docket Entry 8 at 1.) The Court (per the undersigned) granted that aspect of Plaintiff's letter motion, and terminated "Defendant Mike Apple . . . as a Defendant in this case and [ordered] the case [to] proceed only against Defendant Officer Drew Holley." (Text Order dated Jan. 20, 2023.) After that Text Order, a summons issued to Defendant Holley. (See Docket Entry 11.)

Defendant Holley now moves to dismiss the Amended Complaint. (Docket Entry 16.) The Supporting Memorandum argues for dismissal on several grounds. (See Docket Entry 17 at 1-25.) First, the Supporting Memorandum contends that the Amended Complaint, which consists of only a title page and a page identifying the parties, fails to "specifically allege any claims against Defendant Holley." (Id. at 2; see also id. at n.1 {arguing that "Plaintiff's Amended Complaint supersedes the original Complaint and the original Complaint is without legal effect"). Second, the Supporting Memorandum asserts that Plaintiff did not sufficiently effect service of process on Defendant Holley, because the summons "was *not* delivered to, accepted by, or signed by Defendant Holley, by anyone employed by the Alamance County Sheriff's Office, by

Case 1:22-cv-01025-LCB-LPA   Document 21   Filed 08/10/23   Page 3 of 21

Defendant Holley's agent, or by anyone authorized to receive or accept service on Defendant Holley's behalf." (Id. at 5 (emphasis in original).)  Third, the Supporting Memorandum avers that Plaintiff's allegations "are little more than threadbare allegations upon which a claim of excessive force cannot be sustained." (Id. at 17-18.)  Finally, the Supporting Memorandum states that Defendant Holley "is entitled to qualified immunity." (Id. at 21.)

In response, Plaintiff explained that he only filed two pages as his Amended Complaint "to change [Defendant's] name . . . because that[']s the only request that needed to be made." (Docket Entry 19 at 2.)  As for service of process, the Response notes that Defendant Holley "rec[e]ived one." (Id.)  The Response also attempts to set forth more detailed allegations surrounding the events of September 18, 2022.  (See id. at 3-8.)

Defendant's Reply contends first that "Plaintiff's assertions [regarding service of process] do nothing to overcome Defendant's argument that service was not properly affected [sic]." (Docket Entry 20 at 2.)  The Reply also argues that "Plaintiff's new allegations are not properly before the Court and should neither be credited nor addressed for purposes of resolving Defendant's Motion to Dismiss." (Id. at 6.)  The Reply further asserts that Plaintiff "failed to rebut Defendant's argument [as to qualified immunity]." (Id. at 4.)

4

## II. DISCUSSION

### A. Rule 12(b)(2) and (5) Standards

Rather than challenge the substance of process, "[a] motion under Rule 12(b)(5) . . . challeng[es] the manner or sufficiency of service of process." Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996). "[T]he technical requirements of service [found in Federal Rule of Civil Procedure 4(e)] should be construed liberally as long as the defendant had actual notice of the pending suit." Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003). Even so, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Rule 12(b)(2) and (5) often go hand-in-hand because, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987); see also Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 228 (4th Cir. 2019) (identifying, as among "fundamentals," dictate that "[p]ersonal jurisdiction requires valid service of process that comports with due process").

### B. Rule 12(b)(6) Standards

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." ACA Fin. Guar.

5

Corp. v. City of Buena Vista, Va., 917 F.3d 206, 211 (4th Cir. 2019). "To sufficiently plead a claim, the Federal Rules of Civil Procedure require that a pleading . . . contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Id. (citing Fed. R. Civ. P. 8(a) (internal brackets and quotation marks omitted)). Although "[t]his pleading standard does not require detailed factual allegations," id., a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[1]  The Court thus need not accept as true any "legal conclusions," id., or "bare assertions devoid of further factual enhancement," Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

---

[1] Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.'  But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

As a general matter, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Typically, a "court cannot go beyond these documents," id., without "convert[ing] the motion into one for summary judgment," id.

## C. Excessive Force

An arrest made through the use of excessive force constitutes an unreasonable seizure and therefore violates the Fourth Amendment. See Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015). "This includes attacks by police dogs improperly deployed by their handlers." Vathekan v. Prince George's Cnty., 154 F.3d 173, 178 (4th Cir. 1998). Courts use an objective reasonableness standard to determine whether "law enforcement officials used excessive force in the course of making an arrest." Graham v. Connor, 490 U.S. 386, 388 (1989). In that regard, the inquiry ignores the mental state of officers involved, and focuses instead on "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996).

In assessing objective reasonableness, a court should view the use of force "in full context, with an eye toward the proportionality of the force in light of all the circumstances."

Smith, 781 F.3d at 101-02 (internal quotation marks omitted) (reiterating rejection of "argu[ment] that [courts] should take a 'segmented view of the sequence of events' and hold that each step taken by the officer was reasonable based on [the plaintiff's] immediately preceding actions"). Relevant circumstances "includ[e] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Notably, "the reasonableness of force employed can turn on a change of circumstances during an encounter lasting only a few seconds." Harris v. Pittman, 927 F.3d 266, 274 (4th Cir. 2019) (internal quotation marks omitted); see also Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005) ("[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated.").

## D. Qualified Immunity

Qualified immunity, in certain circumstances, "protects government officials from liability for civil damages." Danser v. Stansberry, 772 F.3d 340, 345 (4th Cir. 2014). Where an official has violated an individual's constitutional rights, qualified immunity will still shield that official from personal liability "unless the official's conduct violated a clearly established constitutional right." Pearson v. Callahan, 555 U.S. 223, 232

8

(2009). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on [Defendants]." <u>Meyers v. Baltimore Cnty., Md.</u>, 713 F.3d 723, 731 (4th Cir. 2013).

<u>E. Defendant Holley's Motion to Dismiss</u>

*Failure to Incorporate Factual Allegations*

Defendant Holley first moves to dismiss Plaintiff's Amended Complaint on the grounds that, in that filing, Plaintiff failed to "specifically allege any claims against Defendant Holley." (Docket Entry 17 at 2.) The Court should decline to dismiss the Amended Complaint on that basis.

True, "an amended pleading ordinarily supersedes the original and renders it of no legal effect." <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 572 (4th Cir. 2001). But "document[s] filed pro se [are] to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson</u>, 551 U.S. at 94. To that point, the United States Court of Appeals for the Fourth Circuit has counseled district courts that, when considering a motion to dismiss a pro se plaintiff's complaint, the court must not "permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed." <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978); <u>see also</u> <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1277 (4th Cir. 1985) (reminding

9

that "the work of an untutored hand requir[es] special judicial solicitude"); see also Johnson v. Silvers, 742 F.2d 823, 824 n.1 (4th Cir. 1984) (holding that district court "must allow a pro se litigant a reasonable opportunity to amend his pleadings to name the proper defendant").

In consideration of those principles, and with an eye towards efficient dispute resolution, courts in this circuit regularly consider factual allegations in a pro se plaintiff's original and amended complaint, and liberally construe filings associated with an amended complaint. See Lee v. Kanode, No. 7:20-CV-00305, 2022 WL 4798263, at *1 n.1 (W.D. Va. Sept. 30, 2022) (finding that pro se plaintiff, who neglected to sign original complaint, then submitted signed amended complaint that lacked factual details from original complaint, made "good faith attempt to . . . to incorporate the factual details from his first complaint into his amended complaint" (internal brackets omitted)); Duneske v. Greenville Cnty. Sheriff's Off., No. 6:20-CV-2599, 2020 WL 13747858, at *1 (D.S.C. Nov. 12, 2020) (considering factual allegations in both original and amended complaint); Owens v. University of S.C., No. 3:18-CV-547, 2018 WL 3587028, at *1 n.2 (D.S.C. July 26, 2018) (acknowledging general rule of Young, but then granting plaintiff's motion to amend his amended complaint in order to incorporate factual allegations from original complaint into amended complaint), recommendation adopted, No. 3:18-CV-547,

10

2019 WL 421886 (D.S.C. Feb. 4, 2019), aff'd, 771 F. App'x 299 (4th Cir. 2019).

The Court here should conclude that Plaintiff made a "good faith attempt to . . . to incorporate the factual details from his first complaint into his amended complaint." Lee, 2022 WL 4798263, at *1 n.1. A note Plaintiff attached to his Amended Complaint indicates that Plaintiff previously included in his (original) Complaint "the wrong name" (Docket Entry 5 at 3), and Plaintiff, in the Amended Complaint, then corrected Defendant's name to "D. Holly" (id. at 2). With just a modicum of liberal construction, see Erickson, 551 U.S. at 94, the Court can infer that Plaintiff wished only to change the name of Defendant, and not any other factual allegation; otherwise, Plaintiff would have stated that he got some other detail "wrong" (see Docket Entry 19 at 2 (Response noting that Plaintiff only filed "the two pages to change [Defendant's] name and that['s] it because that[']s the only request that needed to be made").) At bottom, the Court should defer to the United States Supreme Court's view that, when considering amendments to pleadings, Plaintiff "ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Accordingly, the Court should not dismiss this action on the grounds that Plaintiff failed to properly incorporate the factual allegations from his Complaint into his Amended Complaint, and instead should treat the

allegations in the Complaint as incorporated against Defendant Holley.

### *Rule 12(b)(2) and (5)*

Defendant Holley also argues for dismissal due to improper service of process. (<u>See</u> Docket Entry 17 at 10.) According to the Supporting Memorandum, "Plaintiff's summons form instructed that Defendant Holley be served at 109 South Maple Street, Burlington, NC 27217, a non-existent address." (<u>Id.</u> at 11.) Despite this error, "the certified letter was nonetheless delivered to and signed for somewhere and by someone within the City of Burlington." (<u>Id.</u> at 12.) Then, for reasons unknown to Defendant, the summons arrived at "the Alamance County Sheriff's Office . . ., [bu]t was received in the normal course of business by an administrative secretary who merely accepts regular mail on behalf of the Alamance County Sheriff's Office, and who is not an authorized agent to accept service on behalf of Defendant Holley or the Alamance County Sheriff's Office." (<u>Id.</u>; <u>see also</u> Docket Entry 17-2 at 1-4 (affidavit of summons recipient attesting that she lacks authorization "to accept service on Defendant Holley's behalf")).) Accordingly, the Supporting Memorandum argues that the Amended Complaint "should be dismissed for lack of personal jurisdiction." (<u>Id.</u> at 16.)

As mentioned previously, "the technical requirements of service should be construed liberally as long as the defendant had

actual notice of the pending suit." Elkins, 213 F.R.D. at 275.
But, "the rules are there to be followed, and plain requirements
for the means of effecting service of process may not be ignored."
Armco, 733 F.2d at 1089. To that end, although "[s]ervice of
process is not freestyle, and courts are directed not to overlook
procedural deficiencies just because actual notice occurred,"
Shaver v. Cooleemee Volunteer Fire Dep't, No. 1:07CV00175, 2008 WL
942560, at *2 (M.D.N.C. Apr. 7, 2008), "[d]ismissal under Rule
12(b)(5) is not justified where it appears that service can be
properly made," Plant Genetic, 933 F. Supp. at 527 (internal
quotation marks omitted); see also Gregory v. U.S./U.S. Bankr. Ct.
for Dist. of Colo., 942 F.2d 1498, 1500 (10th Cir. 1991) (stating
"general rule [] that when a court finds that service is
insufficient but curable, it generally should quash the service and
give the plaintiff an opportunity to re-serve the defendant"
(internal quotation marks omitted)); Rivera Otero v. Amgen Mfg.
Ltd., 317 F.R.D. 326, 329 (D.P.R. 2016) (curable defects in first
attempt at service of process do not warrant dismissal under Rule
12(b)(5)).

Furthermore, "dismissal of a civil action for [inadequate
service of process] is inappropriate unless otherwise a party's
rights would be seriously prejudiced or no reasonably conceivable
means of acquiring jurisdiction over the defendant remains." Miree
v. United States, 490 F. Supp. 768, 776 (N.D. Ga. 1980). The

13

Supporting Memorandum does not attempt to establish prejudice (nor could it, as Defendant Holley timely received actual notice of this suit) and does not endeavor to show the impossibility of this Court acquiring personal jurisdiction over him. As a result, the inadequacy of service of process (particularly where, as here, (1) Plaintiff proceeds pro se and relies in part on the United States Marshals Service to obtain proper service of process, and (2) Defendant Holley suffered no apparent prejudice) does not warrant dismissal under Rule 12(b)(2) or (5).

The Court should not, however, deem service of process sufficient just because Defendant Holley has received actual notice of the lawsuit. As the Fourth Circuit has made clear, "[a]ctual notice does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a pro se plaintiff." Scott v. Maryland State Dep't of Lab., 673 F. App'x 299, 305 (4th Cir. 2016); see also In re Newbrook Shipping Corp., 31 F.4th 889, 897 (4th Cir. 2022) ("Some courts have ventured beyond that required by the Rules to permit service by any means that provides actual notice. Doing so, they have reasoned, conserves resources that would be wasted if compliance with the Rules was required. . . . But regardless of [the] wisdom [of that practice], . . . [a]ctual notice with no delivery to the named person fails to satisfy the Rule's demands."). Accordingly, the Court should deny Defendant Holley's Motion to Dismiss under Rules

14

12(b)(2) and (5), but order Plaintiff to properly effect service. To meet its obligation to assist Plaintiff (who, again, proceeds pro se) the Court should order that Defendant Holley's counsel (as an officer of the Court) either (1) provide a proper service address for Defendant Holley, or (2) propose some other solution, such as agreeing to accept service on his behalf or to facilitate execution of a waiver of service.

### Rule 12(b)(6)[2]

As an additional basis for dismissal, the Supporting Memorandum argues that, even if the Court considered the allegations from the original Complaint as incorporated against Defendant Holley, those allegations constitute "little more than threadbare allegations upon which a claim of excessive force cannot be sustained." (Docket Entry 17 at 17-18.) As noted, those allegations include that Plaintiff engaged in a high speed chase with Defendant and, after Plaintiff "got stopped" (Docket Entry 2 at 4) and "was in custody" (id. at 3), Defendant "allowed his K9 unit dog to continue to attack [Plaintiff]" (id.). The Court

---

2 The Supporting Memorandum devotes approximately two pages to Monell liability (see Docket Entry 17 at 21-23 (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978))), even though the Amended Complaint presses a claim against Defendant Holley in only his individual capacity (see Docket Entry 5 at 2). On that topic, the Supporting Memorandum notes that "it does not appear that Plaintiff seeks to make an official capacity claim against Defendant Holley." (Docket Entry 17 at 22.) The Court should adopt that view, and deny as moot the Motion to Dismiss as it relates to any official capacity claim against Defendant Holley.

15

should conclude, as it previously did, that those allegations sufficiently support a claim for excessive force. (See Docket Entry 6 at 1 (allowing excessive force claim in Complaint to proceed).) Further, at this stage, the Court should not consider any new allegations Plaintiff raised in the Response. See Odjaghian v. HHS Tech. Grp., LLC, 848 F. App'x 534, 541 (4th Cir. 2021) (stating "well-established [principle] that parties cannot amend their complaints through briefing").[3]

---

3 Defendant Holley alternatively argues that, if the Court did consider Plaintiff's new allegations, those allegations would serve to undermine his excessive force claim. (See Docket Entry 20 at 7-9.) The Court, even if it elected to consider Plaintiff's new allegations in the Response, should not construe those allegations as Defendant Holley does. For example, the Reply argues that the Response concedes that "[Plaintiff] had not surrendered to Defendant and readily acknowledges that Defendant had not gained control over Plaintiff or otherwise subdued Plaintiff." (Id. at 8.) The Response, however, merely alleges that, "[h]ad [Defendant] Holley told [Plaintiff] **before** he deployed his K9[, Plaintiff] would have known not to move." (Docket Entry 19 at 6 (emphasis added).) That allegation does not in any way conflict with the allegation in the Complaint that Defendant Holley permitted his canine to "**continue** to attack [Plaintiff] after [he] was in custody." (Docket Entry 2 at 3.) The former allegation relates to a period prior to Plaintiff's placement in custody; the latter speaks to what transpired after Defendant placed Plaintiff in custody. Similarly, the Response's allegation that Plaintiff "never resisted [Defendant] Holley" (Docket Entry 19 at 4) does not contradict the allegation in the Complaint that Defendant Holley's allegedly excessive use of force occurred after "a high speed chase" (Docket Entry 2 at 4). The new allegation in the Response, placed in context, refers to Plaintiff's conduct **after** "his exit of [his] car." (Docket Entry 19 at 4; see also id. (alleging that, while Plaintiff "was detained" with "one arm behind his back," Defendant Holley "continually command[ed] the K9 to get [Plaintiff], get [Plaintiff]," and that, as Defendant Holley instructed his canine to continue biting Plaintiff, Plaintiff "never resisted . . . in any way").) Thus, even though the Court should ignore the Response's new allegations for purposes of ruling

As summarized previously, the unreasonable deployment of a police canine can support a claim for excessive force. See Vathekan, 154 F.3d at 178. Moreover, "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." Waterman, 393 F.3d at 481. Taken together, it follows from those principles that continued deployment of a police canine against a suspect who does not pose a threat to officers or the public constitutes excessive force. See Keenan v. Ahern, 524 F. Supp. 3d 472, 478–79 (E.D. Va. 2021) (denying motion to dismiss and concluding with "little difficulty" that allegation of police canine bites of motionless individual "amounts to excessive force in violation of the Fourth Amendment").

Here, Plaintiff's factual allegations, which the Court must accept as true, see Iqbal, 556 U.S. at 678, adequately support a claim that Defendant Holley subjected Plaintiff to excessive force. According to those allegations, Plaintiff "was in custody" (Docket Entry 2 at 3), but Defendant Holley "allowed his K9 unit dog to continue to attack [Plaintiff]" (id.). Defendant contends that these limited allegations would require "th[e] Court to conclude that Defendant Holley used excessive force, because Defendant Holley's use of force was excessive." (Docket Entry 17 at 19.)

on the Motion to Dismiss, if the Court did examine those allegations, it should not interpret them as inconsistent with those in Plaintiff's original Complaint.

17

Not so. Ample authority supports the proposition that continued use of force against an individual, either in custody or not posing a threat, suffices to support a claim for excessive force. E.g., Jones v. Buchanan, 325 F.3d 520, 532 (4th Cir. 2003) (reiterating that officers may not employ "unnecessary" or "gratuitous" force in making a seizure; Maney v. Garrison, 681 F. App'x 210, 220 (4th Cir. 2017) ("To be sure, a bite from a police canine is a significant use of force."); Orellana v. United States, No. 20-CV-0845, 2021 WL 1251888, at *7 (D. Md. Apr. 5, 2021) (allegation that officers, "without any verbal warning," released police dog into basement where plaintiff and her child slept sufficed to set forth claim for excessive force). In sum, the Court should not dismiss this action based on the argument that Plaintiff failed to state an excessive force claim.[4]

---

[4] Because Plaintiff's excessive force claim should proceed, and due to the limited factual record available to the Court at this early stage of the proceedings, the Court should also deny Defendant Holley's Motion to Dismiss as it relates to the issue of punitive damages. (See Docket Entry 17 at 24 (arguing that "Plaintiff has not alleged malice").) The Supporting Memorandum cited no authority for its contention that a plaintiff must expressly allege malice in order to sustain a request for punitive damages; the case Defendant Holley cited involved a court dismissing a plaintiff's independent **claim** for punitive damages, see McMahon v. Synthron, Inc., No. 1:05-CV-324, 2006 WL 149054, at *5 (W.D.N.C. Jan. 18, 2006) (noting that "punitive damages is not a cause of action, but is instead a remedy"). Plaintiff here did not bring a "claim" for punitive damages; he only sought punitive damages as a remedy. (See Docket Entry 2 at 5 (seeking "punitive . . . damages" under section entitled "Relief").)

For this same reason, the Court should reject the Reply's argument that Plaintiff abandoned his claim for punitive damages by failing

*Qualified Immunity*

Given the recommended disposition above, the Court should similarly deny the Motion to Dismiss as it relates to the issue of qualified immunity. At the time of Plaintiff's alleged arrest, Fourth Circuit precedent clearly established that "[a]n attack by an unreasonably deployed police dog in the course of a seizure is a Fourth Amendment excessive force violation." <u>Vathekan</u>, 154 F.3d at 178. Likewise, precedent clearly established that "[t]he use of any unnecessary, gratuitous, and disproportionate force . . . precludes an officer from receiving qualified immunity if the subject is unarmed and secured." <u>Meyers</u>, 713 F.3d at 735; <u>see also</u> <u>Jones</u>, 325 F.3d at 533–34 (collecting cases).

Accordingly, the Court should conclude that "the principles clearly espoused by the Fourth Circuit in [the above] cases gave

---

to raise an "argument in opposition to Defendant's assertion that Plaintiff lacks any entitlement to punitive damages." To repeat, Plaintiff did not bring a claim for punitive damages. And, in any event, by citing inapposite authority, the Motion to Dismiss failed to raise a colorable argument that Plaintiff lacks entitlement to punitive damages. Any failure by Plaintiff to adequately respond would not turn a flawed argument by Defendant Holley into a sound one. Moreover, when remedying a constitutional tort, "[punitive] damages are available . . . for conduct that involves reckless or callous indifference to the federally protected rights of others." <u>Cooper v. Dyke</u>, 814 F.2d 941, 948 (4th Cir. 1987) (internal quotation mark omitted). At this stage, and in considering only the allegations set forth in the Complaint, the Court should conclude that Defendant's continued deployment of a police canine against an individual in custody, at a minimum, could support a finding of "reckless or callous indifference" to Plaintiff's constitutional rights. <u>See</u> <u>Cooper</u>, 814 F.2d at 948. The Court should therefore deny the Motion to Dismiss on the issue of punitive damages.

19

Defendant [Holley] more than fair warning that his conduct, under the circumstances presented, was unlawful." Keenan, 524 F. Supp. 3d at 483 (internal quotation marks omitted). The current posture of this case, as well as the mandate that the Court accept as true Plaintiff's allegations, warrants this conclusion. See Ray v. Roane, 948 F.3d 222, 229 (4th Cir. 2020) (reversing district court's grant of qualified immunity at motion to dismiss stage because court failed to accept as true all allegations in complaint); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (discussing improbable circumstances under which courts can fairly evaluate affirmative defenses on motion to dismiss, given that motion to dismiss "tests the sufficiency of the complaint"). "Defendant is, of course, free to assert the defense of qualified immunity again at the summary judgment stage with the benefit of a more fully developed evidentiary record." Keenan, 524 F. Supp. 3d at 484. But, for now, the Court should deny the Motion to Dismiss on this point.[5]

---

5 In the Reply, Defendant Holley contends that Plaintiff's failure to address his arguments as to qualified immunity "has resulted in [Plaintiff's] abandonment of his claims." (Docket Entry 20 at 6.) The Reply also cites several cases for the proposition that "the failure to address an argument in opposition to a motion to dismiss constitutes an abandonment of the claim." (Id. at 5 (citing Eary v. Anderson Equip. Co., No. 2:21cv00104, 2021 WL 1910040, *2 (S.D. W. Va. May 12, 2021); Sawyers v. United Parcel Service, Inc., No. 1:18cv1037, 2019 WL 4305771 (M.D.N.C. Sept. 11, 2019); Fravel v. Ford Motor Co., 973 F. Supp. 2d 651, 654 (W.D. Va. 2013); Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010).) But those cases do not support such a broad proposition, because they (respectively) entailed a

20

### III. CONCLUSION

The Complaint, as amended, adequately states an excessive force claim against Defendant Holley, and Defendant Holley has not demonstrated entitlement to qualified immunity. Further, Plaintiff's deficient, but curable, attempt at service of process does not warrant dismissal of this action.

**IT IS THEREFORE RECOMMENDED** that:

1) The Motion to Dismiss (Docket Entry 16) be denied as moot with regard to any official capacity claim;

2) The Motion to Dismiss, in all other respects, be denied;

3) Defendant Holley's counsel either (1) provide a correct address for Defendant Holley, or (2) propose another option for obtaining service of process; and

4) Plaintiff properly effect service on Defendant Holley.

This 9th day of August, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

---

complete failure to respond to a motion to dismiss, see Eary, 2021 WL 1910040, at *2, an express indication from the plaintiff "that she ha[d] elected not to pursue a [certain] claim, Fravel, 973 F. Supp. 2d at 654, and two employment discrimination cases where the plaintiff brought a claim that exceeded the scope of the charge of discrimination with the EEOC, and failed to argue otherwise, see Ferdinand-Davenport, 742 F. Supp. 2d at 777; Sawyers, 2019 WL 4305771, at *3. Defendant Holley cannot persuasively use those cases to buttress his otherwise lacking (and premature) argument as to qualified immunity (an affirmative defense, not a claim), particularly given that Defendant Holley, as the moving party, bears "[t]he burden of proof and persuasion with respect to [qualified immunity]," Meyers, 713 F.3d at 731.

21